[Civ. No. 26939.    Second Dist., Div. Three.    Oct. 31, 1963.]

Estate of MAUDE FRIES, Deceased. WALTER FRIES, Petitioner and Appellant, v. GEORGE BEADLES et al., Objectors and Respondents.

726

Virgil V. Becker and Cecil L. Whitehead for Petitioner and Appellant.

Benjamin P. Riskin for Objectors and Respondents.

FORD, J.—This is an appeal from a portion of a decree of final distribution. The appellant contends that the superior court committed error in determining that the will of decedent, Maude Fries, while embodying the nomination of an executor, made no disposition of any of the decedent's property.[1] The appellant is Walter Fries, the surviving husband

---

[1] In the notice of appeal it is stated that the appeal is also from that portion of the decree which determined that "all of the probate assets are the separate property of the decedent and were not transmuted into

of the decedent and the person named as executor. The respondents are the decedent's surviving brother and sister, George Beadles and Ellen Connolly, and Ruth Midgley, the surviving daughter of a deceased sister. The superior court determined that the property subject to probate was the separate property of Maude Fries and decreed that one-half interest in the property available for distribution be distributed to appellant and one-sixth to each respondent.

The will was on a printed form entitled "Last Will and Testament." The body thereof was as follows (the words inserted in the blank spaces by the testatrix being indicated by the use of italics):

"I, *Maude Fries Maude Lamar,* a resident of *742 No. Orange Drive, Los Angeles* California declare this to be my last Will and revoke all other Wills previously made by me:

"FIRST: *I order and direct that my executor hereinafter named pay all my just debts and funeral expenses as soon after my decease as conveniently may be.*

"SECOND: *After the payment of such funeral expenses and debts, I give, devise and bequeath all property both personal and real and stocks or bonds, notes or mortgages, now held or that I may acquire after date below.*

"LASTLY, *I make, constitute and appoint my husband, Walter Fries (to act without any bond) to be executor of this last Will and Testament, hereby revoking all former Wills made by me.*

"I appoint *Walter Fries* as Executor of this Will.

"This Will was signed by me on the *23* day of *January, 1960,* at *Los Angeles,* California."

▋ In harmony with the reasoning of the Supreme Court in *Estate of Karkeet,* 56 Cal.2d 277 [14 Cal.Rptr. 664, 363 P.2d 896], the superior court properly determined that extrinsic evidence was admissible for the purpose of resolving the apparent ambiguity arising from the use of language making reference to all of the property of the testatrix but not specifically mentioning any person other than her husband who was to act as executor "without bond."[2] The

---

the community property of said decedent and appellant." The appellant's briefs do not relate to this matter and it may be deemed that this portion of the appeal has been abandoned. (See *Bonadiman-McCain, Inc.* v. *Snow,* 183 Cal.App.2d 58, 65 [6 Cal.Rptr. 52].)

[2]In *Estate of Karkeet, supra,* the body of the will was as follows: "This is my authorization to Miss Leah Selix, 832 Green St., San

extrinsic evidence consisted mainly of the testimony of the appellant. None of the respondents testified.

The appellant and Maude Fries were married on May 14, 1950. She was about six years older than her husband. Her death occurred on June 17, 1960. Several divorce actions had been instituted in the course of the 10-year period of the relationship. In September 1958, after a period of separation, the parties became reconciled. The appellant testified that at that time Mrs. Fries told him that she was willing to give him everything if he would come home and protect her. He further testified as follows: ''She said that she would give me everything if she died before I died, anything of any nature, personal, real, cash, stocks, bonds, anything that she possessed or owned at that time and I agreed to give her everything if I died before she died.''

The appellant testified that he and Mrs. Fries visited the respondent Ruth Midgley about three or four times between September 1958 and June 1960. Mrs. Midgley visited at their home on Easter Sunday in 1960. During an earlier period of time, she visited them every Saturday. In answer to a question as to whether he knew of any instance in which Mrs. Fries had given any money or property to any of her relatives or other persons while he was married to her, Mr. Fries' testimony was: ''No, I don't think so.''

Upon being shown a particular document by his attorney, the appellant testified that he thought he had seen it once or twice while he and Mrs. Fries were living together and that

---

Francisco, California, to act as executrix of all and any property and personal effects (and bank accounts) to act without bond or order of Court.''

The Supreme Court stated (56 Cal.2d at p. 283): ''A reading of the will, and the provision for an 'executrix' in these circumstances may, as stated, justify the foregoing conclusion in the minds of reasonable men, and at the same time justify a different conclusion in the minds of other, equally reasonable men. Where a technical term within a will, used by a testator presumed to be unfamiliar with its strict meaning, is to be construed according to the testator's intent, the mere use of the term may well be deemed to create an uncertainty or ambiguity. (*Estate of Pierce*, 32 Cal.2d 265, 272-273 [196 P.2d 1]; *Estate of Boyd, supra*, 148 Cal.App.2d 821, 824 [307 P.2d 754].) Such an ambiguity is to be resolved from the words of the will 'taking into view the circumstances under which it was made.' (Prob. Code, § 105.)

''The court in the case at bar should have considered extrinsic evidence for the purpose of resolving this apparent ambiguity. (*Estate of Sargavak*, 41 Cal.2d 314 [259 P.2d 897]; *Estate of Kearns*, 36 Cal.2d 531 [225 P.2d 218].) ''

he had given it to his attorney after her death.[3] An objection was thereafter interposed by respondents to the following question: "And did your wife tell you what the document was?" The court stated that it would be inclined to sustain the objection and asked the appellant to make an offer of proof. The offer of proof was as follows: "... what we offer to show by this is that this was the last will prepared by the former husband of the decedent in this matter. She had lived with this man for a number of years as husband and wife and he predeceased her. This was his will and the estate ... came to her and this will she had in her possession when she died, and ... her will, the decedent's will in this case, is identical to this one." Appellant's counsel stated that the purpose was to show the intent of the testatrix. He did not assert that the prior will had been probated. The court indicated that the evidence would not be admitted, stating that it seemed to be "a little too tenuous." Just before the submission of the case, when the appellant sought to have the document received in evidence, the trial judge stated that he had decided that it was not admissible "under any circumstances."

█ The governing law with respect to an offer of proof is stated as follows in *Moore* v. *Rogers*, 157 Cal.App.2d 192, at page 197 [320 P.2d 524]: "An offer of proof must be distinctly directed to some material fact and if it is vague or fails to reveal what facts it is proposed to bring out it is not error for the court to reject it. [Citations.] █ In general, the rule is that in order to be sufficient an offer of proof

---

[3]The body of the document was as follows (the language which was inserted on the printed form being designated by the use of italics):

"In the name of God, Amen. I, *Joseph Cyprian Lamar*, of *7129 Clyde Avenue, Chicago, Illinois* in the County of *Cook* and State of *Illinois*, being of sound mind and memory, and considering the uncertainties of this frail and transitory life, do therefore, make, ordain, publish and declare, this to be my last Will and Testament.

"First. I order and direct that my Execut*rix* hereinafter named pay all my just debts and funeral expenses as soon after my decease as conveniently may be.

"Second. After the payment of such funeral expenses and debts, I give, devise and bequeath *all property both personal and real, and stocks or bonds, notes or mortgages, now held or that I may acquire after date below.*

"Lastly, I make, constitute and appoint *Maude Pearl Lamar* (*to act without any bond*) to be Execut*rix* of this, my last Will and Testament, hereby revoking all former Wills by me made.

"In witness whereof, I have hereunto subscribed my name and affixed my seal the *fourth* day of *May* in the year of our Lord, One Thousand Nine Hundred and *Thirty-Three.*"

must show, in effect, that a witness or witnesses are available and the particular facts which it is expected will be brought out through the testimony offered." ▮ The offer of proof in the present case might have been more carefully stated. It is a reasonable conclusion therefrom, however, that the appellant sought to offer declarations of Mrs. Fries which would give rise to the inference that her state of mind was that the language employed in the document (set forth in footnote 3, *supra*,) was sufficient to enable a surviving spouse, therein named as executor or executrix, to receive all of the estate of the deceased spouse.

▮ Oral declarations of a testator as to his intentions are excluded under the rule embodied in section 105 of the Probate Code.[4] But, as stated in *Estate of Doody*, 204 Cal.App. 2d 419, at page 426 [22 Cal.Rptr. 264]: "Not all oral declarations are excluded. By its very terms, section 105 merely excludes '... the oral declarations of the testator *as to his intentions*; ...' (Italics added.)" (See also *Estate of Glow*, 208 Cal.App.2d 613, 616-617 [25 Cal.Rptr. 416].) ▮ Consequently, the proscription does not apply to oral declarations of a testator which are offered for the purpose of showing his state of mind with respect to the meaning of particular language used by him in a will which is ambiguous. (See Note 94 A.L.R. 26, 280; 4 Page on Wills (Bowe-Parker revision 1962) § 32.9, p. 274; 57 Am.Jur., Wills, § 1115.)

It is true that the appellant does not discuss in his briefs the question of the admissibility of the excluded evidence. Rather, in his argument he assumes that the matter set forth in the offer of proof was before the superior court at the time of its determination of the problem presented. ▮ But as stated in *Schubert* v. *Lowe*, 193 Cal. 291, at page 294 [223 P. 550]: "... we know of no hard-and-fast rule which prohibits the court from considering and deciding points of law which may not have been urged and argued in the briefs originally filed if it appears to the court that an important legal principle is necessarily involved in the newly discovered point and

---

[4]Section 105 of the Probate Code is as follows: "When there is an imperfect description, or no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the oral declarations of the testator as to his intentions; and when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations."

that a proper disposition of the case requires a discussion and decision of that point." (See also *Kurlan* v. *Columbia Broadcasting System,* 40 Cal.2d 799, 806 [256 P.2d 962].) ■ An examination of the entire cause leads to the conclusion that it is reasonably probable that a result more favorable to the appellant would have been reached if the court had received and considered the offered evidence and, therefore, there has been a miscarriage of justice. (See *Alcorn* v. *Davies,* 173 Cal.App.2d 569, 575 [343 P.2d 621].)

The portion of the judgment decreeing final distribution of the estate which is the subject of this appeal is reversed and the matter is remanded to the superior court for further proceedings in accordance with the law as set forth herein. Each party shall bear his or her own costs on this appeal.

Shinn, P. J., concurred.

FILES, J.—I dissent. As I read the ambiguous colloquy which followed appellant's so-called offer of proof, the court indicated that additional evidence would be received as to the testatrix' state of mind. The case was then recessed until afternoon so appellant could make further preparation. Appellant never pursued the matter. We may infer he found that his witnesses could contribute nothing further that would be helpful.

Appellant's sole contention in this court is that the word "executor" should be construed to mean "beneficiary" as a matter of law. As to this, we are all agreed he is wrong. He does not complain of any exclusion of evidence or assert that he has additional testimony which could be produced on a retrial. The supposed will of the decedent's first husband, offered without any foundation, was properly excluded as an irrelevant and immaterial piece of paper.

The trial court considered all of the evidence properly offered by appellant and decided a fact issue against him. He is not entitled to another trial.

A petition for a rehearing was denied November 27, 1963. Files, J., was of the opinion that the petition should be granted. Respondents' petition for a hearing by the Supreme Court was denied December 18, 1963.